LILLIAN BLAU *vs.* WALSH-KAISER COMPANY, INC.

MAY 29, 1947.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J. This is a petition for compensation under the occupational disease article of the workmen's compensation act, general laws 1938, chapter 300, article VIII. The justice of the superior court who heard the cause found that petitioner had contracted dermatitis venenata, an occupational disease under the act, but that it had not incapacitated her, although respondent was liable for petitioner's medical expenses in treating it. A decree embodying those findings and denying compensation, but granting her petition for the payment of medical expenses up to August 4, 1945 and denying it for such expenses incurred thereafter, was entered by the superior court. From that decree petitioner has duly appealed to this court.

Petitioner contends that the main question raised by her appeal is whether the evidence shows that she continued to suffer from an occupational disease from August 4, 1945 to May 31, 1946. It is more accurate to say that the question is whether there is any legal evidence in the record to support the trial justice's findings. If there is such evidence, we are not here concerned with its weight or the credibility of the witnesses, because by virtue of the statute and numerous decisions of this court his findings, in the absence of fraud, are conclusive. G. L. 1938, chap. 300, art. III, §6; *Ruggiero* v. *Brown & Sharpe Mfg. Co.*, 71 R. I. 178. On the other hand, if his findings are entirely without legal evidence to support them, they are erroneous in law and will be reversed by this court. *Pepe* v. *American Silk Spinning Co.*, 70 R. I. 309.

The undisputed evidence shows that petitioner was employed by respondent from March 13, 1944 to August 4, 1945, when her employment was terminated by reason of the fact that respondent had no more work for her. She described her employment at respondent's shipyard as that of a tool room attendant, which required constant daily handling of wet, painted distribution and connection boxes,

and greasy and oily brass and steel tubes. In September, 1944 her hands first began to feel itchy and later, either in December, 1944 or January, 1945, an eruption started on her right hand. She reported to the "yard hospital" in February or March, 1945 and respondent's doctor on duty there gave her some medicine and later some salve, but the condition grew worse until May 18, 1945 when, at the suggestion of the doctor, she went to a dermatologist or skin specialist, Dr. Francisco Ronchese.

Doctor Ronchese diagnosed her condition as "dermatitis venenata" or an occupational dermatitis of the hands and advised her to wear gloves at her work. He treated her and thereafter she wore gloves while working, although not at all times, and thereupon her condition improved. He admitted, on cross-examination, that shortly before her work was terminated on August 4, 1945 her hands had "cleared up". However, he testified that they got bad again, and on September 14, 1945 he examined her and found a skin eruption on her feet which, though similar in appearance to the condition of her hands, was not dermatitis venenata but pustulous psoriasis, which he testified was a different disease and not due to her employment. He would not admit, however, that the condition of her hands on that date was the same as the condition of her feet.

On October 8, 1945 she was examined by another dermatologist, Dr. Vincent J. Ryan, who had first examined her on May 21, 1945, at which time he had found that she was suffering from occupational dermatitis of the hands. However, on his second examination he found eruptions on the toes and plantar surfaces of both feet and similar eruptions on her hands. He testified that she thus presented to him on October 8, 1945 "a different clinical picture" from what she did upon his first examination on May 21, 1945. He felt that this was "a new skin condition entirely" and diagnosed it as "epidermophytosis—ringworm—of the feet and hands." He further testified that in his opinion it was not associated at all with her employment.

In view of the fact that he testified that petitioner had told him on the occasion of his examination of her on October 8, 1945 that the previous condition of her hands had cleared up several weeks before this later eruption appeared on her hands and feet, Dr. Ryan's testimony as to the nature and cause of that eruption on her hands may be fairly considered to be in conflict with Dr. Ronchese's testimony on that point. The resolution of that conflict was within the sole province of the trial justice and he has resolved it by expressly finding that petitioner was not suffering from nor incapacitated by occupational dermatitis after August 4, 1945. And he further found, consistently with such finding, that respondent was not liable for petitioner's medical expenses in treating her new skin condition which appeared after that date.

On this view we need not concern ourselves with the question whether or not there is any legal evidence to support the trial justice's finding that petitioner was not incapacitated from earning wages by reason of the condition of her hands after August 4, 1945. Until her employment was terminated on that date she lost no time from her work. After that date, according to the trial justice's finding, she was no longer suffering from occupational dermatitis and, therefore, even though the new condition of her hands incapacitated her from earning wages between August 4, 1945 and May 31, 1946, such incapacity would not be compensable because there was legal evidence that it was not due to an occupational disease scheduled under art. VIII of the workmen's compensation act.

The petitioner's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Leonard A. Kamaras,* for petitioner.

*Henry M. Boss, John T. Keenan,* for respondent.